**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLYNN ROE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 16-5520** |
| | : | |
| **THE MCKEE MANAGEMENT** | : | |
| **ASSOCIATES, INC,** *et al* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                              **February 21, 2017**

A fired 70-year-old employee receiving unemployment benefits and expecting a promised favorable reference who later raised post-termination age discrimination claims now seeks to amend her complaint to allege her former employers illegally retaliated against her under the Age Discrimination in Employment Act by contesting her ongoing unemployment benefits and refusing to issue the promised favorable reference. We find the proposed second amended complaint neither prejudicial nor sought after undue delay.

The former employers also argue the amendment is futile. To determine whether the proposed amendment states a retaliation claim sufficient to withstand a motion to dismiss, we must decide whether, under the governing Act, the employee's post-termination refusal to sign a release or raising claims of age discrimination are protected activity. We must then decide whether the former employers' arguably responsive post-termination contest of her ongoing unemployment benefits and withholding a favorable reference can be post-employment adverse employment actions giving rise to a potential retaliation claim. In 2004, our Court of Appeals held a former employee could not proceed on a retaliation claim under the Act based on post-termination adverse actions. We find this 2004 reasoning cannot withstand the analysis required by the Supreme Court's 2006 guidance in the similarly-phrased Title VII paradigm in *Burlington*

*Northern & Santa Fe Ry. Co. v. White.* Courts in this Circuit allow Title VII retaliation claims based on post-termination conduct including contesting unemployment benefits. We do not see a reasoned basis to distinguish post-termination retaliation for claiming age discrimination under the Act from post-termination retaliation when former employees claim race or gender discrimination under Title VII.

In the accompanying Order, we grant leave to amend to allow the terminated employee to allege retaliation based on her post-termination age discrimination claim followed shortly thereafter by the former employers' change of position in contesting her ongoing unemployment benefits and refusing to issue the promised favorable reference.

**I.    Facts**

In February 1996, The McKee Management Associates, Inc., The McKee Group, and Lindenwood Apartments, LTD (together the "former employers") hired Carolynn Roe to manage five of their multi-unit apartment complexes.[1] Ms. Roe received favorable performance reviews, salary increases, and other bonuses during her twenty years of employment.[2] In February 2015, the former employers increased her salary and thanked her for hard work and dedication.[3] The former employers never reprimanded her or placed her on a performance improvement plan.[4]

Ms. Roe's former employers fired her on June 8, 2015, at the age of 70.[5] They replaced her with Andres Hames, approximately age 40.[6] Kevin McLaughlin, Esquire, the former employers' attorney, and Ms. Custer, the Human Resources Manager, told Ms. Roe she could collect unemployment and would receive a good reference.[7] When Ms. Roe asked why they fired her, Attorney McLaughlin said "performance."[8] Ms. Custer would not give Ms. Roe specifics and told her to talk to a lawyer.[9] Attorney McLaughlin handed Ms. Roe a standard release of claims against the former employers, including claims under the Age Discrimination in

2

Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA") (the "June release").[10] Ms. Roe did not sign the June release.

Ms. Roe filed for unemployment benefits on June 15, 2015 and began receiving payments.[11] On June 29, 2015, Ms. Roe's attorney told her former employers she intended to file a claim of age discrimination.[12]

On July 7, 2015, the former employers began to contest Roe's unemployment benefits claiming performance deficiencies.[13] With the contest, the Commonwealth stopped the unemployment payments.[14] On August 7 and 14, 2015, the former employers' new lawyer presented Ms. Roe with a broader release waiving all claims, specifically including claims under the ADEA and PHRA (the "August release").[15] The former employer said they would not oppose her unemployment benefits in exchange for her signing the release.[16] Ms. Roe refused to sign the August release.[17]

Ms. Roe instead pursued and won her claim for unemployment benefits through Pennsylvania's Department of Labor Board of Review.[18] After winning at this level, the Commonwealth began paying her unemployment benefits again five months after it had stopped payments based on the contest.[19] The former employers have not issued the promised reference letter.[20]

After receipt of a right to sue letter, Ms. Roe timely sued the former employers alleging their reasons for termination are pretext for age discrimination and they retaliated post-termination against her by contesting unemployment benefits and withholding a favorable reference after she engaged in protected activity of refusing to sign the June or August releases and claiming age discrimination.

3

## II.    Analysis

Responding to the former employers' motion to dismiss, Ms. Roe moves to amend her first amended complaint. We grant Ms. Roe's motion for leave to amend except as to her claim of protected activity based on refusing to sign the June and August releases.

Federal Rule of Civil Procedure 15(a)(2) requires we "freely give leave when justice so requires."[21] "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."[22] The former employers argue undue delay, prejudice, and futility, but fail to demonstrate undue delay, prejudice, or futility.

Our Court of Appeals instructs "delay alone is an insufficient ground to deny leave to amend."[23] An "undue" delay places "an unwarranted burden on the court."[24] "The issue of prejudice requires [a] focus on the hardship to the defendants if the amendment were permitted."[25] These hardships can include "additional discovery, cost, and preparation to defend against new facts or new theories."[26] Amendments are futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted."[27] Our Court of Appeals has stated "the pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint."[28]

### A.  We find no undue delay or prejudice.

Ms. Roe has not unduly delayed her request to again amend her complaint. The former employers rely on *Bjorgung v. Whitetail Resort, LP* and *Estate of Olivia ex rel. McHugh v. New Jersey* to argue undue delay.[29] Both cases involved plaintiffs who delayed their requests to amend for several years.[30] Ms. Roe filed her original complaint on October 21, 2016, her first amended complaint on January 20, 2017, and her motion for leave to amend her complaint a second time on February 10, 2017.[31] This delay is not "undue." She added facts to address her

4

former employers' motions to dismiss. While plaintiffs should meet our pleading standards in their first filing, we should not discourage plaintiffs from amending to meet pleading deficiencies so early in the case.

The former employers argue a third version of the complaint will prejudice them. They claim Ms. Roe adds improper allegations about Rule 408 settlement discussions in her proposed second amended complaint.[32] They also argue they have already incurred costs from filing their two previous motions to dismiss and will have to incur the expense of a third motion to dismiss.[33] The former employers also argue they already sent written discovery requests based on the first amended complaint, and will have to send additional interrogatories based on the newly plead facts in the second amended complaint.[34]

These arguments do not establish prejudice. The settlement discussions are not an issue because Ms. Roe's allegations address the causation elements of the retaliation claim. They are not introduced for a use Rule 408 prohibits.[35] The former employers have not shown how their previous discovery requests, now awaiting response, are wasted in light of Ms. Roe's proposed changes. In the accompanying Order, we allow the parties discovery requests beyond the Rule 33 limits. The former employers have not established undue delay or prejudice.

## B. The proposed second amended complaint is not futile.

The central dispute is whether Ms. Roe can state a claim for ADEA retaliation arising from the former employers' post-termination conduct in contesting unemployment benefits and withholding a promised reference letter after Ms. Roe refused to sign the June and August releases and after Ms. Roe's lawyer told the former employers of potential liability for age discrimination.

5

To establish a *prima facie* case of retaliation under ADEA, Ms. Roe must show she "engaged in protected conduct; (2) [she] was subject to an adverse employment action subsequent to such activity; and (3) ... a causal link exists between the protected activity and the adverse action."[36] The former employers presently challenge Ms. Roe's ability, as a matter of ADEA law, to plead post-termination protected conduct and adverse employment actions. They concede, for purposes of this motion, Ms. Roe pleaded a causal link between her alleged protected conduct and their responsive acts.

Ms. Roe's second amended complaint adds several facts directed at the retaliation claim. Unlike the first amended complaint, the second amended complaint pleads the second element of the *prima facie* case of retaliation. The second amended complaint provides additional information about the alleged adverse employment actions. The first amended complaint only discussed the June release, and did not address the August release. The second amended complaint pleads additional facts about the August release. The second amended complaint clarifies the former employers did not condition her ability to collect unemployment on her signing the June release, but did condition their withdrawal of opposition to her unemployment claim on her signing the August release. The second amended complaint also reveals Ms. Roe began receiving unemployment payments after she filed for unemployment in mid-June, and stopped receiving the payments about five weeks later.

The second amended complaint also clarifies the timeline of the alleged retaliation. The first amended complaint only alleges she filed for unemployment, informed the former employers of her intent to file age discrimination claims, and had to pursue her claim for unemployment against the former employers' opposition up to the Department of Labor Board of Review. The second amended complaint fleshes out this timeline by alleging she filed for

6

unemployment and began receiving payments, and then informed the former employers of her intent to sue through her attorney. The former employers then began to contest her unemployment benefits claim, causing the payments to discontinue. They presented her with the August release shortly thereafter, this time conditioning their withdrawal of their opposition to her unemployment claim on her signing the August release.

Lastly, the first amended complaint says nothing about the reference letter the former employers promised Ms. Roe. The first amended complaint only states the former employers told her they would provide her with a good reference when they fired her. The second amended complaint adds Ms. Roe still has not received a reference letter. These added allegations and clarifications allow Ms. Roe to plead the second element in her *prima facie* case of retaliation.

Assuming, as we must, these facts will be proven, we must now examine whether pleading of post-employment activity is protected conduct and an employer's responsive actions can be considered adverse employment actions under ADEA.

### 1. Ms. Roe alleges protected conduct in claiming age discrimination but not in failing to sign the June and August releases.

Under the ADEA, a person has engaged in "protected conduct" when she "has opposed any practice made unlawful by... section [623]" of the Act.[37] Section 623 makes it unlawful to discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's age."[38]

Ms. Roe does not allege protected conduct before her termination. She alleges after her termination she (1) refused to sign a release of discrimination claims against her former employers,[39] and (2) informed her former employers she intended to file charges of age discrimination.[40] We shall consider each of these activities in turn.

### a. Ms. Roe's refusal to sign a release is not protected conduct.

7

Our Court of Appeals held in *EEOC v. Allstate* a refusal to sign a release of discrimination claims is not a protected activity under the ADEA. In *EEOC v. Allstate*, the defendants changed their business model and terminated several employees.[41] The defendants required the former employees "to sign a release of all legal claims against the company related to their employment or termination, including discrimination claims arising under ... the Age Discrimination in Employment Act[.]"[42] Several former employees refused to sign the release and filed discrimination and retaliation charges.[43]

The EEOC argued the former employees' refusal to sign a release constitutes opposition to unlawful discrimination.[44] Our Court of Appeals disagreed, stating "such inaction does not communicate opposition sufficiently specific to qualify as protected employee activity."[45] Our Court of Appeals held "[b]ecause Allstate's Release barred its signatories from bringing *any* claims against Allstate concerning their employment or termination, employee agents who refused to sign it might have done so for any number of reasons unrelated to discrimination."[46]

Ms. Roe alleges Attorney McLaughlin handed her "a release of claims" when the former employers fired her on June 8, 2015.[47] She described this June release as "a release of her right to file claims under the ADEA and PHRA."[48] She refused to sign this release.[49] She then alleges on August 7 and 14, 2015, the former employers' new lawyer presented her with "a release to sign whereby she would waive any and all claims including her right to pursue claims under the ADEA and PHRA and in exchange for the Defendants not contesting her unemployment claim."[50] This August release occurred after the former employers began opposing her unemployment benefits claim on July 7, 2015.[51] Ms. Roe refused to sign this August release.[52]

Ms. Roe's refusal to sign the August release cannot serve as the protected conduct because it occurred after the alleged retaliation took place.[53] Ms. Roe's refusal to sign the June

8

release occurred before the alleged retaliation, but this release contained a general release of all claims, including age discrimination claims. As in *Allstate*, Ms. Roe's refusal to sign this release does not communicate specific opposition to age discrimination. This alleged protected activity does not suffice to meet the first element of the *prima facie* case.

### b. Ms. Roe's claim for age discrimination is protected conduct.

The former employers argue Ms. Roe's stated intent to sue for age discrimination is not protected because it occurred after her termination.[54] The former employers' argument assumes a protected activity cannot occur after an employee's termination. We disagree.

An individual can engage in a protected activity under ADEA after their termination. In *Fasold v. Justice*, the plaintiff filed an EEOC charge for age discrimination after his termination.[55] Our Court of Appeals found "there is no dispute that Fasold engaged in a protected employee activity in that he filed a complaint with the EEOC and the PHRC."[56] In *Schmidt v. Montgomery Kone, Inc.*, the defendants laid off the plaintiff and he filed an age discrimination complaint with the EEOC.[57] The defendants then called him back to work and assigned him more difficult and dangerous tasks upon his return.[58] He alleged these work assignments were in retaliation for filing the EEOC complaint after his lay-off.[59] The court held the plaintiff stated a *prima facie* case of retaliation.[60]

Communicating intent to sue is a protected activity under the ADEA. Our Court of Appeals held in *Barber* an individual engages in protected conduct under the ADEA when he or she opposes age discrimination. "A general complaint of unfair treatment does not translate into a charge of illegal <u>age</u> discrimination."[61] Our Court of Appeals did not precisely define the type of conduct constituting protected activity, but stated "[o]ur analysis requires only that we analyze the message… conveyed[.]"[62]

9

In *Zielinski v. Whitehall Manor, Inc.*, the plaintiff's attorney sent the plaintiff's supervisor a letter stating "if I learn of evidence supporting a claim for age discrimination we will lodge those charges[.]"[63] The court noted "[c]onsistent with *Barber*, plaintiff's attorney specifically mentioned age discrimination, so the letter is not a general claim of unfair treatment."[64] The court held "[i]f protesting age discrimination by society in general constitutes protected activity, certainly plaintiff's attorney threatening to sue plaintiff's Supervisor upon learning of evidence supporting age discrimination constitutes protected activity."[65]

Ms. Roe's attorney informed the former employers she "intended to file a claim of age discrimination with the appropriate governmental agency."[66] As in *Zielinski*, Ms. Roe's attorney specifically mentioned age discrimination and communicated clear opposition to age discrimination. This activity constitutes protected conduct under the ADEA. Ms. Roe's proposed second amended complaint pleads the first element of the *prima facie* case for retaliation.

### 2.  Ms. Roe pleads two post-employment adverse employment actions.

Ms. Roe does not allege she experienced adverse employment actions before her termination. She instead alleges adverse employment actions occurring after her termination: her former employers opposed her unemployment benefits claim[67] and refused to give her a good reference.[68]  Both of these actions allegedly occurred after the former employers promised not to contest unemployment benefits and to provide a good reference. Ms. Roe received unemployment benefits for several weeks. The former employers contested unemployment benefits after Ms. Roe's lawyer told the former employers of an age discrimination claim, and the Commonwealth then stopped her benefit payments.

10

### a. The former employers' opposition to Ms. Roe's unemployment benefits claims is an adverse employment action.

Ms. Roe and her former employers disagree on the relevant standard governing the required timing of an "adverse employment action" under ADEA. The former employers rely on *Glanzman v. Metropolitan Mgmt. Co.* as the controlling precedent arguing we cannot find an ADEA adverse employment action after termination. Ms. Roe relies on the Supreme Court's later holding in *Burlington Northern & Santa Fe Ry. Co. v. White* applying a different standard for an adverse employment action in a Title VII case.

In *Glanzman*, defendants fired the plaintiff after discovering her plans to steal a dishwasher from one of their properties.[69] The plaintiff filed for unemployment benefits, and defendants contested her claim.[70] She argued this opposition constituted an adverse employment action for purposes of a retaliation claim under the ADEA.[71] Our Court of Appeals held her "retaliation argument fails because she was not employed … at the time of the alleged retaliation."[72] Our Court of Appeals held "given the nature of unemployment benefits, her employment was terminated before, not after or contemporaneous with, her filing for unemployment benefits. Once her employment was terminated it was not possible for her to suffer adverse employment action."[73]

Even with this bright line rule from our Court of Appeals, the former employers admit post-termination actions can constitute adverse employment actions after *Glanzman* if they affect the former employee's ability to obtain future employment.[74] They argue Ms. Roe has not and cannot allege their opposition to her unemployment benefits claim impacted her employment prospects.[75] Ms. Roe has not alleged this opposition impacts her employment prospects but described harm during oral argument and may do so in her second amended complaint if possible under Fed.R.Civ.P. 11.

11

Eighteen months after *Glanzman,* the United States Supreme Court in *Burlington Northern* expanded the definition of an "adverse employment action" in the Title VII retaliation context.[76] The Supreme Court held "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse[.]"[77] "Materially adverse" means the adverse employment action would have dissuaded a reasonable worker from filing a charge of discrimination.[78] Ms. Roe argues we should apply this standard to find, in an ADEA context, the former employers' post-termination actions would dissuade a reasonable worker from making or supporting a charge of discrimination.[79]

Our Court of Appeals has applied *Burlington Northern* to ADEA retaliation claims, but those cases either involved pre-termination adverse employment actions, joint Title VII and ADEA retaliation claims, or both. In *Daniels v. School District of Philadelphia*, the plaintiff asserted retaliation claims under both Title VII and ADEA.[80] Our Court of Appeals stated "[w]e address these claims together as the circumstances of this case do not require that we make differing analyses."[81] The adverse employment actions in *Daniels* occurred pre-termination.[82] In *Mikulski v. Bucks County Cmty.College*, Judge Baylson applied *Burlington Northern* to an ADEA retaliation claim also involving pre-termination adverse employment actions.[83] In *Swain v. City of Vineland*, the plaintiff asserted a retaliation claim only under the ADEA and its New Jersey equivalent.[84] Our Court of Appeals applied the *Burlington Northern* standard to this claim, but the adverse employment actions also occurred pre-termination.[85]

Our Court of Appeals has not clarified how *Burlington Northern* affects *Glanzman* regarding post-termination adverse employment actions for ADEA retaliation claims. The *Glanzman* reasoning makes sense on a facial level; how can someone suffer an adverse employment action after she is no longer employed? But the Supreme Court recognizing the

12

realities of retaliation after *Glanzman* announced a more deferential standard focusing on whether the employers' action, even post-termination, would have a chilling effect on asserting discrimination claims.

*Burlington Northern* concerns a Title VII retaliation claim, not an ADEA retaliation claim. In *Stezzi v. Citizens Bank of Pennsylvania*, Judge O'Neill in reviewing a Title VII claim commented, in *dicta,* "[while] the respective anti-retaliation provisions under the ADEA and Title VII are nearly identical, Courts in this Circuit have not uniformly applied these provisions with regards to claims for post-employment retaliation. As *Glanzman* demonstrates, our Court of Appeals held in December 2004 a former employee cannot bring an ADEA retaliation claim for alleged conduct occurring post-employment."[86]   Judge O'Neill reviewed a Title VII case and held only *Glanzman* had no effect upon the Title VII post-termination adverse conduct claim. We decline to follow this *dicta.*

We follow Judge Vanaskie's more persuasive reasoning in his post-*Burlington Northern* holding in *Petrunich v. Sun Building Systems* and apply the *Burlington Northern* standard to Ms. Roe's ADEA retaliation claim plead in her proposed second amended complaint. In *Petrunich*, plaintiff alleged the defendant opposed his request for unemployment benefits in retaliation for his ADEA complaint.[87]   Judge Vanaskie held "under the standard articulated in [*Burlington Northern*], the opposition to Mr. Petrunich's claim for unemployment benefits is an adverse employment action because it would discourage a reasonable worker from filing an age discrimination complaint."[88]   Judge Vanaskie did not distinguish between post-employment retaliation for discrimination charges simply because one type of discrimination is for race or gender and the other is for age.

13

Courts in other Circuits have also interpreted *Burlington Northern* to permit a plaintiff to base their *prima facie* case of Title VII retaliation on their former employer's opposition to their unemployment claims. In *Koger v. Woody*, a Title VII case, the district court found the plaintiff stated a plausible claim for retaliation when she alleged her former employers presented false information to contest her unemployment benefits.[89] The Court held "[g]iven the scope of retaliation claims that the Supreme Court articulated in *Burlington v. White*, Plaintiff has met her burden of pleading a retaliation claim sufficiently to survive a motion to dismiss."[90] The District of Columbia Circuit also noted in *dicta* a former employer's false report to contest unemployment benefits "involve[d] conduct that… the Supreme Court has already indicated can support a retaliation claim [in *Burlington Northern*]."[91]

We see no basis to preclude ADEA plaintiffs from the same rights to retaliation claims as those asserting ADEA and Title VII. The language of the anti-retaliation provisions in ADEA and Title VII is virtually identical.[92] Our Court of Appeals has applied the *Burlington Northern* "materially adverse" standard to ADEA retaliation claims. Our Court of Appeals' narrow interpretation of post-employment retaliation in *Glanzman* pre-dates the Supreme Court's *Burlington Northern* guidance. We are aware of no reason why the same statutory language in a Title VII retaliation case would prohibit post-termination retaliation but would permit it for age discrimination. Under this standard of whether former employers' post termination actions would dissuade a reasonable worker from making or supporting a charge of discrimination, we find the former employers' opposition to Ms. Roe's unemployment benefits constitutes an adverse employment action.

Under the *Burlington Northern* standard, Ms. Roe's second amended complaint alleges an adverse employment action for purposes of the *prima facie* case of retaliation. The second

14

amended complaint clarifies Ms. Roe initially succeeded in obtaining unemployment benefits until her former employers began opposing her claim on July 7, 2015.[93] We can plausibly infer at this stage the risk of losing unemployment benefits payments would dissuade a reasonable worker from filing a discrimination charge. These added details allow Ms. Roe to meet the second element of the *prima facie* case.

### b. The former employers' failure to issue the promised reference letter can be an adverse employment action.

Ms. Roe also adds in her second amended complaint she has still not received a positive reference from her former employers. This added allegation affects her ability to meet the second element of the *prima facie* case.

The former employers' failure to provide Ms. Roe with a reference constitutes an adverse employment action because it impacts her ability to obtain future employment. Our Court of Appeals has held an individual "may file a retaliation action against a previous employer for retaliatory conduct occurring after the end of the employment relationship when the retaliatory act... arises out of or is related to the employment relationship."[94] "We [have] held that a former employee could state a claim for retaliation arising out of post-employment conduct, so long as the retaliation affected the plaintiff's future employment opportunities."[95]

In *Foster v. JLG Indus.*, the district court denied the defendants' motion to dismiss and allowed an ADEA retaliation claim to proceed "only with respect to the failure to provide Plaintiff with post-employment references."[96] Ms. Roe's second amended complaint clarifies the former employers failed to provide her with a reference and this failure is affecting her employment prospects. Ms. Roe alleges "[b]ecause Defendants have not provided Ms. Roe with the positive referenced [*sic*] as promised, her future employment opportunity [*sic*] have been greatly impaired and her prospects of finding comparable employment greatly diminished[.]"[97]

15

This amended allegation allows Ms. Roe to meet the second element of the *prima facie* case of retaliation.

## III.    Conclusion

Ms. Roe's proposed second amended complaint is not proffered after undue delay and does not unduly prejudice her former employers at this early stage. While the former employers dispute the facts, those issues need to await trial or at least review of a fulsome summary judgment record. Ms. Roe states a claim for ADEA retaliation arising from her post-termination protected activity of claiming age discrimination which arguably resulted in her former employers' change of position in contesting her ongoing unemployment benefits and never issuing the promised favorable reference letter. On the deferential standard applied today, we allow Ms. Roe to file a second amended complaint consistent with the accompanying Order and this Memorandum.

---

[1] Proposed Second Amended Complaint at ¶¶ 14, 22, 29 (ECF Doc. No. 11).

[2] *Id*. at ¶¶ 23-26.

[3] *Id.* at ¶ 27.

[4] *Id.* at ¶ 28.

[5] *Id.* at ¶ 29.

[6] *Id.* at ¶ 32.

[7] *Id.* at ¶¶ 30, 31.

[8] *Id.* at ¶ 30.

[9] *Id.*

[10] *Id.* at ¶¶ 30, 35.

[11] *Id.* at ¶¶ 33, 35.

[12] *Id.* at ¶ 34.

[13] *Id.* at ¶ 35.

[14] *Id.*

[15] *Id.* at ¶ 36.

[16] *Id.*

[17] *Id.*

[18] *Id.* at ¶ 35.

[19] *Id.*

[20] *Id.* at ¶ 37.

[21] Fed.R.Civ.P. 15(a)(2).

[22] *Alston v. Parker*, 363 F.3d 113, 115 (3d Cir. 2004).

[23] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2011).

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

[28] *CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.*, 703 F.3d 612 (3d Cir. 2013) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984)).

[29] Defendants' Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint at p. 3 (ECF Doc. No. 22).

[30] *Bjorgung*, 550 F.3d 263, 266 (3d Cir. 2008); *Estate of Olivia ex rel. McHugh,* 604 F.3d 788, 803 (3d Cir. 2010).

[31] ECF Doc. Nos. 1, 6, 16.

[32] ECF Doc. No. 22, at pp. 6-7.

[33] *Id.*

[34] *Id.* at p. 7.

[35] The former employers also object to Ms. Roe's "sharp pleading practices" regarding what they contend are Rule 408 discussions. ECF Doc. No. 22, at p. 9. We consider this argument subsumed in the former employers' other Rule 408 arguments concerning prejudice. These issues may also be addressed in pre-trial *in limine* motions.

[36] *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701 (3d Cir. 1995).

[37] 29 U.S.C. § 623(d).

[38] 29 U.S.C. § 623(a).

[39] ECF Doc. No. 11 at ¶ 35.

[40] *Id.* at ¶ 34.

[41] 778 F.3d 444, 446-47 (3d Cir. 2015).

[42] *Id.* at 447.

[43] *Id.* at 447-48.

[44] *Id.* at 452.

[45] *Id.*

[46] *Id.* (emphasis in original).

[47] First Amended Complaint at ¶ 30 (ECF Doc. No. 6).

[48] *Id.* at ¶ 35.

[49] *Id.*

[50] *Id.* at ¶ 36.

[51] *Id.* at ¶ 35.

[52] *Id.* at ¶ 36.

18

[53] *Barber*, 68 F.3d at 701.

[54] Defendants' Motion to Dismiss First Amended Complaint at p. 5 (ECF Doc. No. 8).

[55] *Fasold v. Justice*, 409 F.3d 178, 182 (3d Cir. 2005).

[56] *Id.* at 188.

[57] 69 F. Supp. 2d 706, 709 (E.D. Pa. 1999).

[58] *Id.*

[59] *Id.*

[60] *Id.* at 714.

[61] *Barber*, 68 F.3d at 702 (emphasis in original).

[62] *Id.*

[63] 899 F. Supp. 2d 344, 354 (E.D. Pa. 2012).

[64] *Id.*

[65] *Id.*

[66] ECF Doc. No. 11 at ¶ 34.

[67] *Id.* at ¶ 35.

[68] *Id.* at ¶ 37.

[69] 391 F.3d 506, 509-10 (3d Cir. 2004).

[70] *Id.* at 515-16.

[71] *Id.*

[72] *Id.*

[73] *Id.*; *See also Boyle v. McCann-Erickson*, 949 F.Supp. 1095 (S.D.N.Y. 1997) (before *Burlington Northern,* holding employer did not retaliate by deciding not to rehire after terminating employee and then learning of age discrimination claim because the decision did not affect the employment, which had ended, or his ability to enforce his rights).

19

[74] ECF Doc. No. 8, at pp. 6-7. *See Fasold*, 409 F.3d at 188-89 and *Mullen v. Chester Cty. Hosp.*, No. 14-2836, 2015 WL 1954349 at *10 (E.D. Pa. Apr. 30, 2015).

[75] ECF Doc. No. 8, at p. 7.

[76] 548 U.S. 53, 57 (2006).

[77] *Id.* at 68.

[78] *Id.* (citing *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)).

[79] ECF Doc. No. 11 at p. 10.

[80] 776 F.3 181, 192 (3d Cir. 2015).

[81] *Id.*

[82] *Id.* at 196.

[83] No. 11-557, 2011 WL 1584081, *4 (E.D.Pa. Apr. 27, 2011).

[84] 457 F. App'x 107 (3d Cir. 2012).

[85] *Id.* at 111.

[86] No. 10-4333, 2012 WL 4717900 at *3 (E.D. Pa. Oct. 4, 2012).

[87] No. 4-2234, 2006 WL 2788208 at *7 (M.D. Pa. Sept. 26, 2006).

[88] *Id.* at *8.

[89] No. 09-09, 2009 WL 2762610 at *4 (E.D. Va. Aug. 28, 2009).

[90] *Id.* at *5.

[91] *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008). Courts in other Circuits have held the opposite. In *Yanke v. Mueller Die Cut Solutions, Inc.*, a district court in the Western District of North Carolina stated it "does not consider an employer's lawful participation in an employee's worker's compensation or unemployment benefit proceedings as an 'adverse action' within the meaning of Title VII[.]" No. 3-527, 2007 WL 437694 at *9 (W.D.N.C. Feb. 5, 2007).

[92] *See* 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a); *see also Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) ("The ADEA contains a nearly identical provision prohibiting retaliation for complaining of employment discrimination on the basis of

age, *see* 29 U.S.C. § 623(d), and the same standards and burdens apply to claims under both statutes, *see, e.g., Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003)"); *Satterfield v. Consol. Pa. Coal Co.,* No. 06-1262, 2007 WL 2728541 (W.D.Pa. Sept. 17, 2007) (applying *Burlington Northern* because the Title VII and ADEA retaliation provisions are "not materially different");

[93] ECF Doc. No. 11 at ¶ 35.

[94] *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3d Cir. 1994)). Although *Charlton* is a Title VII retaliation case, one court in this District applied it to an ADEA retaliation claim. *See Sylvester v. Unisys Corp.*, No. 97-7488, 1999 WL 167725 at *11 (E.D. Pa. Mar. 25, 1999).

[95] *Robinson v. City of Pittsburgh*, 120 F.3d 1286, n. 15 (3d Cir. 1997).

[96] 372 F. Supp. 2d 792, 804 (M.D. Pa. 2005).

[97] ECF Doc. No. 11 at ¶ 37.